IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jimmy W. Wilson,<br><br>         Plaintiff,<br><br>v.<br><br>Dr. Way, HCA Nurse Darrell Harrison, and Dr. McRee,<br><br>         Defendants. | ) C/A No. 5:15-00025-MBS-KDW<br>)<br>)<br>)<br>)  Report and Recommendation<br>)<br>)<br>)<br>) |

  Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging Defendants violated his constitutional rights. This matter is before the court on several pending Motions. Defendants filed a Motion for Summary Judgment on September 28, 2015. ECF No. 141. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[1] on September 30, 2015, advising Plaintiff of the importance of such a motion and of the need for him to file an adequate response. ECF No. 143. Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment on November 19, 2015, ECF No. 149, to which Defendants replied on October 26, 2015, ECF No. 152.

  On December 23, 2015, Plaintiff filed a Motion for the case to be set for a jury trial, ECF No. 163, and on January 11, 2016, Defendants responded to Plaintiff's Motion, ECF No. 168. Thereafter, on March 23, 2016, Plaintiff filed a Motion to Dismiss Defendants' Motion for Summary Judgment, ECF No. 176, and on April 11, 2016, Defendants filed a Response, ECF No. 179. Plaintiff filed a Reply on April 27, 2016. ECF No. 184.

  This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

73.02(B)(2)(d) and (e), D.S.C. This Report and Recommendation is entered for the court's review.

I.  Background

Plaintiff Jimmy W. Wilson is currently incarcerated at SCDC's MacDougall Correctional Institution ("MCI"). ECF No. 1 at 2. Plaintiff's Complaint concerns claims for "cruel and unusual punishment [and] deliberate indifference to [his] medical needs." *Id.*

Plaintiff alleges that Defendants Way and McRee decided to take away Klonopin, Plaintiff's "most needed medication" without ever talking to Plaintiff. *Id.* at 5. Plaintiff maintains that he has been on Klonopin "for several years for c[h]ronic dystonia,[2] TMJ, [and] severe nerve damage. . . ." *Id.* Additionally, Plaintiff represents "anyone who knows anything about narcotics, knows you don't just take someone off of the[m] all at once, you ease the dosage down, basically by a week or every two weeks until patient is ok." *Id.* at 5-6. Plaintiff alleges that he was taken off Klonopin completely from November 5 to November 10, 2014, which caused him to suffer "severe blood pressure [and] pulse problems which put [his] life in severe danger." *Id.* at 6.

Additionally, Plaintiff alleges that he is supposed to receive Botox injections every 12 weeks for torticollis,[3] also known as cervical dystonia, for TMJ (Temporomandibular Joint Disorder), and for pre-existing fractures in his neck. *Id.* at 7. Plaintiff represents that the Botox injections are supposed to relieve the tension in the muscles and ligaments in his neck and shoulders. *Id.* Plaintiff alleges that he has received Botox injections only once since 2008 when

---

[2] Dystonia is a movement disorder in which your muscles contract involuntarily, causing repetitive or twisting movements. *See* www.mayoclinic.org/diseases-conditions/dystonia/home/ovc-20163692 (last visited Apr. 26, 2016).

[3] Torticollis "is a fixed or dynamic tilt, rotation, or flexion of the head and/or neck." *See* ECF No. 141 at 2 (citing ECF No. 141-3, SCDC Medical Records 0468).

all doctors have recommended the treatment. *Id.* Plaintiff maintains that the lack of Botox has caused him to experience neck spasms, a tightened jaw, teeth grinding, and pain. *Id.*

Plaintiff requests that the court enter judgment granting him "[a] declaration that the acts and omissions described herein violated [P]laintiff['s] rights under the Constitution and Laws of the United States of America." *Id.* at 9. Plaintiff also requests the court order a preliminary and permanent injunction ordering Defendants "give [him] the medical recommendations" and medications he is supposed to receive immediately and "stop playing games with [his] life as they have been doing for years." *Id.* at 9-10. Additionally, Plaintiff seeks $2,000,000 in compensatory damages against each Defendant jointly and severally, $1,000,000 in punitive damages against each Defendant, a jury trial, costs, and any additional relief the court deems proper. *Id.* at 10.

Plaintiff makes several other allegations concerning his health and medical treatment in attachments to his Complaint. *See* ECF Nos. 1-1 to 1-10. Specifically, Plaintiff alleges that he has contracted fibromyalgia for which he has not been treated. ECF No. 1-1 at 1. Additionally, Plaintiff represents that he has a family history of heart problems and suffers from high cholesterol. ECF No. 1-4 at 1. Plaintiff alleges that he went for over a month without his cholesterol medication. *Id.* Plaintiff includes grievance forms, requests to staff members, and declaration statements from witnesses in the attachments or additions to his Complaint.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

3

of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III. Analysis

There are three pending Motions before the court, EFC Nos. 141, 163, and 176. The undersigned will address these Motions in the order in which they were filed.

a. Defendants' Motion for Summary Judgment

Defendants make several arguments to the court in their Motion for Summary Judgment, and the undersigned will address each argument in turn.

i. Deliberate Indifference to Medical Needs

Defendants maintain they were not deliberately indifferent to Plaintiff's medical needs. ECF No. 141 at 12. To prevent the entry of summary judgment on a cause of action for deliberate indifference to medical needs, a plaintiff must present evidence sufficient to create a genuine issue of fact that the defendant was deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 832-35 (1994); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 846. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or

4

excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). The undersigned will address each of Plaintiff's allegations that he was denied Klonopin and Botox treatments in violation of his constitutional rights in turn.

1. Klonopin

In his first medical indifference claim, Plaintiff maintains that Defendants were deliberately indifferent to his medical needs by taking away his Klonopin medication for a period of five days. ECF No. 1 at 5-6. Essentially, Plaintiff argues Defendants acted with deliberate indifference by making him go without the medication completely instead of tapering his dosage. *Id.* Defendants maintain "[t]he medical records demonstrate very clearly that SCDC was not deliberately indifferent to the Plaintiff's medical needs, nor failed to provide him with medical care." ECF No. 141 at 3.

Defendants concede that on November 4, 2014, Plaintiff took his last Klonopin pill from his 30-day prescription. ECF No. 141-1 at 4-5. Defendants further concede that Plaintiff went without Klonopin from November 5, 2014, until November 9, 2014, when Plaintiff's prescription was refilled by SCDC's Central Pharmacy in Columbia and sent to MCI on November 10, 2014. *See* ECF No. 141-1 at 5; ECF No. 141-7. However, Defendants demonstrate that during the period when Plaintiff was without Klonopin, he was prescribed Vistaril and Clonidine. *See* ECF No. 141-7 at medical encounters 742-44. Additionally, Defendants assert that over the weekend

that he went without Klonopin, "Plaintiff was monitored by medical staff for signs of Klonopin withdrawal, which included monitoring his blood pressure and overall status." ECF No. 141-1 at 4. Defendants also represent that "[t]hrough the combined use of Visteril, Clonidine, and Neurontin (gabapentin), the Plaintiff's decreased signs of distress and discomfort were noted in the records." *Id.* at 4-5. Finally, Defendants maintain that by November 9, 2014, Plaintiff's medical records demonstrate that he was "asymptomatic." *Id.* at 5. Specifically, in Medical Encounter 741, a note from November 9, 2014, indicates: "Inmate [complains of] muscle spasms but felt better. Inmate[s] condition has improved. Decreased sign of distress and discomfort noted this PM. Inmate remains asymptomatic with low B/P obtained." ECF No. 141-7.

The undersigned recognizes that the preferred course of treatment for Plaintiff was not to have a lapse in the Klonopin medication—from both Plaintiff's perspective and the treating medical professionals' perspective. However, as evidenced by his medical records and other evidence presented to the court, Plaintiff was never denied all treatment for his torticollis, just his preferred course of treatment. To the extent he asserts that he should never have had a lapse in treatment, such a claim is more akin to a medical malpractice claim. In *Estelle*, the Supreme Court held that "a complaint that a physician had been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." 429 U.S. at 106. An assertion of mere negligence or malpractice is not enough to state a constitutional violation, Plaintiff must allege and demonstrate "[d]eliberate indifference. . . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. However, a difference of medical opinion is insufficient to establish deliberate indifference. *Estelle,* 429 U.S. at 105–06;

6

*Grayson v. Peed,* 195 F.3d 692, 695–96 (4th Cir. 1999); *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983); *Brown v. Thompson*, 868 F. Supp. 326, 330-32 (S.D. Ga. 1994) (finding that although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary). As the Fourth Circuit Court of Appeals articulated:

> Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983. The standard for § 1983 liability is deliberate indifference to serious medical needs. Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.

*Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (internal citations omitted).

Here, Plaintiff hypothesizes that he could have had a heart attack when he went off the Klonopin and actually suffered severe blood pressure and pulse problems. ECF No. 1 at 6. However, the undersigned finds that Plaintiff has not offered any evidence that would support a finding he suffered a serious injury as a result of Defendants intentionally or recklessly disregarding his needs or delaying his treatment. Rather, the record before the court demonstrates that Plaintiff was consistently treated for his torticollis. Accordingly, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's medical indifference claim concerning the five-day lapse in Plaintiff's receipt of his prescription for Klonopin.

#### 2.     Botox

The other major medical indifference claim in Plaintiff's Complaint concerns Plaintiff's allegations that Defendants were deliberately indifferent to his torticollis condition by depriving him of Botox medical injections. ECF No. 1 at 7. Defendants argue that "[t]he actions of SCDC demonstrate they were not deliberately indifferent to the Plaintiff's medical issues [and] [i]n fact,

the Plaintiff's treatment for torticollis was at all times within the standard of care." ECF No. 141-1 at 9. Moreover, Defendants maintain that "SCDC is under no obligation to follow a course of treatment chosen by the Plaintiff [and] there is no evidence these Defendants were deliberately indifferent to the needs of the Plaintiff." *Id.* at 9-10.

Essentially, Defendants argue that at all times Plaintiff has received consistent medical treatment for his torticollis even though Plaintiff did not receive the Botox treatments he believes he should have received. *Id.* Plaintiff maintains that he has only received Botox injections once since 2008 when all doctors have recommended the treatment. ECF No. 1 at 7. In support of their Motion for Summary Judgment, Defendants attached the affidavit of Dr. John McRee. ECF No. 141-26. There, Defendant McRee attests that Plaintiff has been seen and treated by SCDC medical staff "hundreds of times from September 2008 through the present, for various complaints, including those complained of in [his] Complaint and accompanying documents." *Id.* ¶ 8. In addition to SCDC staff, Defendant McRee represents that Plaintiff has seen "numerous outside specialists for treatment of his medical conditions." *Id.* ¶ 9. Moreover, Defendant McRee avers that "Plaintiff received appropriate medications and treatments for chronic dystonia, torticollis, and nerve pain complained of in the Complaint and accompanying documents." *Id.* ¶ 12. In addition to medications, Defendant McRee attests that Plaintiff has received Botox injections on the following dates: August 31, 2007, April 8, 2008, July 7, 2008, November 4, 2008, July 8, 2014, and May 27, 2015. *Id.* ¶ 13. Outside of the Botox injections, Defendant McRee represents: "The treatment the Plaintiff received for the chronic dystonia, torticollis, and nerve pain also included the use of the medications Klonopin (clonazepam), Neurontin (gabapentin), Baclofen, Artane, Flexeril, Levodopa (Sinemet), Naproxen, Ibuprofen, and physical therapy." *Id.* ¶ 14. In addition to Defendant McRee's affidavit, Defendants have

attached Plaintiff's medical records in support of their Motion for Summary Judgment that confirm their representations to the Court.

The undersigned recognizes that Plaintiff preferred Botox injections over medications for the treatment of torticollis. However, the evidence before the court indicates that at all times Plaintiff received medications for his treatment and was intermittently given Botox injections. It appears Plaintiff was denied Botox treatment for several years spanning from November 4, 2008, July 8, 2014. However, the undersigned notes that in a September 2013 Step-One Grievance Plaintiff represented he was supposed to get a Botox injection every 12 weeks but had not "needed them until now again." *See* ECF No. 1-8 at 12. Moreover, denial of a particular form of treatment and partial delay in medical treatment are not enough to withstand summary dismissal. Plaintiff never alleges nor presents evidence that he was completely denied medical treatment for any serious medical injuries or a serious delay in medical treatment caused him severe injury. Rather, he asserts he should have received a certain course of treatment rather than what he received. Very much like his allegation concerning Klonopin, such a claim is more akin to a medical malpractice claim. *See Estelle*, 429 U.S. at 106; *Miltier*, 896 F.2d at 851; *Wright*, 766 F.2d at 849; *Brown*, 868 F. Supp. at 326.

The undersigned finds that Plaintiff has not offered any evidence that would support a finding he suffered a serious injury as a result of Defendants intentionally or recklessly disregarding his needs or delaying his treatment. Rather, the record before the court demonstrates that Plaintiff was consistently treated for his torticollis. Accordingly, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's medical indifference claim concerning Plaintiff's allegation that he was wrongfully denied Botox treatment.

3. Fibromyalgia

In what is captioned as an "Addition to Plaintiffs Original Complaint Et Al.," Plaintiff alleges that he "has contracted a medical symptom called Fibermialgia (sic) [that] is an underlying nerve damage that to [Plaintiff's] knowledge [and] belief is what is, and has been for quite a while, causing [his] legs to go num (sic) itch and burn, especially [his] right leg. [Plaintiff's] neck is the same way in the cervical area. (spine)." ECF No. 1-1 at 1. Plaintiff maintains that he has raised this medical issue to the attention of the nurses and Defendant Way at MCI, but he has gotten "no response." *Id.* Further, Plaintiff indicates that he is returning to sick call about these issues "hopefully on 12-29-14" and "will send the court a follow-up on this sick call as to what kind of answer I get from them." *Id.* at 2. Defendants do not address Plaintiff's allegation that he has untreated fibromyalgia in their Motion for Summary Judgment. ECF No. 141-1.

In considering Plaintiff's allegation, the undersigned has considered all of Plaintiff's filings, including but not limited to grievances, requests to staff members, declarations from witnesses, and medical encounters/treatment notes. Other than the allegation he made in the attachment to his Complaint, *see* ECF No. 1-1 at 1, there is no evidence concerning Plaintiff's alleged fibromyalgia condition. Furthermore, there is no mention of the fibromyalgia allegation in his complaints/requests to staff, and nothing regarding the condition is ever mentioned in his medical records. Moreover, Plaintiff indicated to the court that he would provide an update regarding his diagnosis of or treatment for fibromyalgia after a December 2014 sick call. However, upon review of all docket entries, the undersigned notes there are no filings with updates containing information related to any response Plaintiff received from his sick call visit.

The undersigned finds that Plaintiff has not offered any evidence that would support a finding he suffered a serious injury as a result of Defendants intentionally or recklessly

disregarding his needs or delaying his treatment for his alleged condition of experiencing symptoms of fibromyalgia. Accordingly, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's medical indifference claim concerning Plaintiff's allegation that he was wrongfully denied treatment for this alleged medical condition.

### 4. Cholesterol

Defendants argue that Plaintiff has been treated for high cholesterol since November 2003. ECF No. 141-1 at 10. However, Defendants maintain that Plaintiff did not comply with treatment ordered by SCDC physicians, and "[i]n October 2010 the Plaintiff signed a Refusal of Medical Advice Form for a low-cholesterol diet." Further, Defendants argue: "Plaintiff's medical records demonstrate this issue was immediately addressed from 2003 through the present, and at all times there has been a continuity of care for his cholesterol condition." *Id.* at 10-11. Plaintiff briefly raises the issue of high cholesterol in his Complaint. ECF No. 1-4 at 1. There, he maintains that he "has a history of family heart problems, and [he] also ha[s] high cholesterol, which for over a month [he] went without chlesterol (sic) medication, because it was not ordered, and it was ordered wrong when [he] finally got it." *Id.*

To the extent Plaintiff has alleged a medical indifference claim concerning his high cholesterol, the undersigned recommends summary judgment be granted to Defendants. On November 4, 2003, Plaintiff was prescribed several medications, including Lipitor. ECF No. 141-32. In his affidavit to the court, Defendant McRee attests that Plaintiff received the following medications for the treatment of high cholesterol: Zocor, Lipitor, and Pravachol. ECF No. 141-31 ¶ 21. Moreover, on October 13, 2010, Plaintiff signed a "Refusal of Medical Advice Form," where he certified that he was under the care of SCDC, and had "been advised of the need for: low cholesterol diet" by Dr. Olivencia. ECF No. 141-33. There, Plaintiff indicated that

11

he had "been counseled concerning the alternative care, if any is available, and the possible and probable consequence if [he] fail[s] to receive the treatment(s) and/or procedure(s) listed above." *Id.*

The undersigned finds that Plaintiff has not offered any evidence that would support a finding he suffered a serious injury as a result of Defendants intentionally or recklessly disregarding his needs or delaying his treatment for high cholesterol. Rather, the record before the court demonstrates that Plaintiff was consistently treated for his high cholesterol. Accordingly, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's medical indifference claim concerning Plaintiff's allegation that he was wrongfully denied treatment for this medical condition.

        ii.        Medical Malpractice

Defendants argue that to the extent Plaintiff's Complaint is construed to include state law causes of action for medical malpractice, "Defendants are entitled to judgment as a matter of law because the Plaintiff failed to proffer expert testimony the Defendants deviated from the appropriate standard of care and that such deviation proximately caused his alleged injuries." ECF No. 141 at 20.

If the court accepts this Report and Recommendation, the only claims within the court's original jurisdiction will be dismissed. Without Plaintiff's § 1983 claims, Plaintiff's sole remaining cause of action—a purported state law claim for medical malpractice—is based on the court's supplemental jurisdiction. Section 1367(c)(3) of Title 28 of the United States Code provides that the district courts "may decline to exercise supplemental jurisdiction [as to claims forming the same case or controversy as those within the court's original jurisdiction] if the district court has dismissed all claims over which it has original jurisdiction[.]" Trial courts

"enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (district court did not abuse its discretion in declining to retain jurisdiction over the state law claims); *See also, e.g.*, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966); *Wauben v. Protega (USA), Inc.*, No. 2:05–2780–PMD–RSC, 2007 WL 775614, at *14 (D.S.C. Mar. 9, 2007) (declining to exercise supplemental jurisdiction over state-law claims upon granting summary judgment as to Title VII claim).

Therefore, to the extent Plaintiff has alleged a medical malpractice claim in violation of state law, the undersigned recommends the court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismiss this matter without prejudice to state-law claims being filed in state court, thus ending the action here. *See* 28 U.S.C. § 1367(c)(3).

### iii. Strike

Finally, Defendants maintain that "[t]he record in this matter reflects that [Plaintiff's] claims are without legal merit." ECF No. 141 at 21. Therefore, "Defendants request that this court make the determination that this matter is frivolous pursuant to U.S.C. §§ 1915 (e)(2)(B)(I) and 1915A(b)(1) [and] this litigation be counted as a "strike" for purposes of the Prison Litigation Reform Act. . ." *Id.* The undersigned does not find Plaintiff's Complaint was filed frivolously. Therefore, the undersigned recommends denying Defendants' request to consider it a strike pursuant to 28 U.S.C. § 1915(g).

### b.     Plaintiff's Motion for Jury Trial and Motion to Dismiss

In his Motion for a Jury Trial, Plaintiff argues that Defendants are not following a treatment plan requiring Botox injections every 90 days. ECF No. 163. Plaintiff asserts that Defendants' Motion for Summary Judgment "should be tossed in the trash and this case set for

trial and let a jury decide because the lack of the Defendants following the treatment plan must mean they really don't care about 9 million dollars either." *Id.* at 2. Defendants argue that Plaintiff's Motion should be denied, and they assert that "Plaintiff cited a twelve year-old physician's note dated July 20, 2004 wherein it stated the Plaintiff had been seen by University of South Carolina specialty clinic doctors who requested Botox injections be scheduled at the Medical University of South Carolina. The Plaintiff cited this document as evidence his alleged 'treatment plan' required he be given Botox injections every ninety days 'give or take a couple of days or so.'" ECF No. 168. The undersigned notes that the 2004 physician note indicates that Plaintiff requests Botox injection be scheduled at MUSC. ECF No. 163-1. However, the note does not establish a 90-day treatment plan. *See id.*

In Plaintiff's Motion to Dismiss, he asserts that Defendants "defaced" his character by bringing out his criminal felony DUI case. ECF No. 176 at 1. Further, Plaintiff pleads with the court "to move for trial or default Defendants." *Id.* at 4. In their Response, Defendants request the court deny Plaintiff's motion and grant their Motion for Summary Judgment. ECF No. 179. In their reasoning, Defendants argue that Plaintiff's arguments are moot because the court previously denied Plaintiff's Motion to Amend his Complaint for untimeliness. *Id.* at 2-3.

Based on the undersigned's recommendations regarding each of Plaintiff's causes of action, the undersigned also recommends that Plaintiff's Motion for a Jury Trial, ECF No. 163, and his Motion to Dismiss Defendants' Motion for Summary Judgment, ECF No. 176, be denied. Because the undersigned finds there is no genuine issue of material fact, this case is not appropriate for trial and should be dismissed.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 141, be *granted*, Plaintiff's Motions, ECF Nos. 163, 176 be *denied*, and Plaintiff's case against Defendants be dismissed.

IT IS SO RECOMMENDED.

April 28, 2016                                                                          Kaymani D. West
Florence, South Carolina                                                  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**